## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEONARD SOKOLOW, AS TRUSTEE OF THE LEONARD J. AND SHARON R. SOKOLOW REVOCABLE TRUST 4/18/18, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUST FOR ADVISED PORTFOLIOS, INFINITY Q CAPITAL MANAGEMENT, LLC, CHRISTOPHER E. KASHMERICK, JOHN C. CHRYSTAL, ALBERT J. DIULIO, S.J., HARRY E. RESIS, RUSSELL B. SIMON. LEONARD POTTER, and JAMES VELISSARIS, | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Leonard Sokolow, as trustee of the Leonard J. and Sharon R. Sokolow Revocable Trust dated 4/18/18 ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Infinity Q Diversified Alpha Fund (the "Fund"), analysts' reports and advisories, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support exists and/or will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all persons and entities that purchased shares of the Infinity Q Diversified Alpha Fund (the "Fund") (tickers: IQDAX and IQDNX) between December 21, 2018 and February 22, 2021, both dates inclusive (the "Class Period"), *and* all persons and entities that held shares of the Fund as of February 22, 2021 and were affected by the wrongdoing alleged herein (the "Class"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§9(f), 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78i, 78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and subsequent damages took place within this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased shares of the Fund during the Class Period and held Fund shares as of February 22, 2021, and was economically damaged thereby.

7. Defendant Trust for Advised Portfolios ("the Trust") is the registrant and issuer of the Fund. The Trust is a Delaware statutory trust registered as an open-ended, management investment company with 18 series, including the Fund.

8. Defendant Infinity Q Capital Management, LLC ("Infinity Q") is a registered investment advisor that purports to provide hedge fund strategies to institutional and retail investors. Infinity Q acts as investment advisor to the Fund pursuant to an Investment Advisory Agreement. Infinity Q's principal executive offices are located at 888 7th Avenue, Suite 3700, New York, NY 10106.

9. Defendant Christopher E. Kashmerick ("Kashmerick") served as the President, Principal Executive Officer, and Trustee for the Trust. Kashmerick signed the Trust's prospectuses.

10. Defendant John C. Chrystal ("Chrystal") served as a Trustee for the Trust. Chrystal signed the Trust's Prospectuses.

11. Defendant Albert J. DiUlio, S.J. ("DiUlio") served as a Trustee for the Trust. DiUlio signed the Trust's Prospectuses.

12. Defendant Harry E. Resis ("Resis") served as a Trustee for the Trust. Resis signed the Trust's Prospectuses.

13. Defendant Russell B. Simon ("Simon") served as a Treasurer and Principal Financial Officer for the Trust. Simon signed the Trust's Prospectuses.

14. Defendant Leonard Potter ("Potter") is the Chief Executive Officer of Infinity Q.

15. Defendant James Velissaris ("Velissaris") is the founder and Chief Investment Officer of Infinity Q.

16. Defendants Kashmerick, Chrystal, DiUlio, Resis, Simon, Potter, and Velissaris shall be collectively referred to as the "Individual Defendants."

17. The Trust, Infinity Q, and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
## Materially False and Misleading Statements

18. On December 21, 2018, the Trust filed a post-effective amendment to its Registration Statement pursuant to Rule 485B on Form N-1A, to become effective December 31, 2018 (the "2019 Prospectus"). The 2019 Prospectus was signed by the Individual Defendants.

19. The 2019 Prospectus stated the following concerning Fund pricing, or Net Asset Value ("NAV") determination:

> Shares of the Fund are sold at NAV per share which is calculated as of the close of regular trading (generally, 4:00 p.m., Eastern Time) on each day that the New York Stock Exchange ("NYSE") is open for unrestricted business. However, the Fund's NAV may be calculated earlier if trading on the NYSE is restricted or as permitted by the SEC. The NYSE is closed on weekends and most national holidays, including New Year's Day, Martin Luther King, Jr. Day, Washington's Birthday/Presidents' Day, Good Friday, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. The NAV will not be calculated on days when the NYSE is closed for trading.
>
> Purchase and redemption requests are priced based on the next NAV per share calculated after receipt of such requests. The NAV is the value of the Fund's securities, cash and other assets, minus all expenses and liabilities (assets —liabilities = NAV). NAV per share is determined by dividing NAV by the number of shares outstanding

(NAV/ # of shares = NAV per share). The NAV takes into account the expenses and fees of the Fund, including management and administration fees, which are accrued daily.

In calculating the NAV, portfolio securities are valued using current market values or official closing prices, if available. Each security owned by the Fund that is listed on a securities exchange is valued at its last sale price on that exchange on the date as of which assets are valued. Where the security is listed on more than one exchange, the Fund will use the price of the exchange that the Fund generally considers to be the principal exchange on which the security is traded.

When reliable market quotations are not readily available or the Fund's pricing service does not provide a valuation (or provides a valuation that in the judgment of the Adviser does not represent the security's fair value) or when, in the judgment of the Adviser, events have rendered the market value unreliable, a security or other asset is valued at its fair value as determined under procedures approved by the Board. Valuing securities at fair value is intended to ensure that the Fund is accurately priced and involves reliance on judgment. Fair value determinations are made in good faith in accordance with the procedures adopted by the Board. The Board will regularly evaluate whether the Fund's fair valuation pricing procedures continue to be appropriate in light of the specific circumstances of the Fund and the quality of prices obtained through their application by the Trust's valuation committee. There can be no assurance that the Fund will obtain the fair value assigned to a security if it were to sell the security at approximately the time at which the Fund determines its NAV per share.

Fair value pricing may be applied to non-U.S. securities. The trading hours for most non-U.S. securities end prior to the close of the NYSE, the time that the Fund's NAV is calculated. The occurrence of certain events after the close of non-U.S. markets, but prior to the close of the NYSE (such as a significant surge or decline in the U.S. market) often will result in an adjustment to the trading prices of non-U.S. securities when non-U.S. markets open on the following business day. If such events occur, the Fund may value non-U.S. securities at fair value, taking into account such events, when it calculates its NAV. In such cases, use of fair valuation can reduce an investor's ability to seek to profit by estimating the Fund's NAV per share in advance of the time the NAV per share is calculated. The Adviser anticipates that the Fund's portfolio holdings will be fair valued when market quotations for those holdings are considered unreliable.

Other types of securities that the Fund may hold for which fair value pricing might be required include, but are not limited to: (a) investments which are not frequently traded and/or the market price of which the Adviser believes may be stale; (b) illiquid securities, including "restricted" securities and private placements for which there is no public market; (c) securities of an issuer that has entered into a restructuring; (d) securities whose trading has been halted or suspended; and (e) fixed income securities that have gone into default and for which there is not a current market value quotation.

5

20. The 2019 Prospectus stated the following concerning valuation of securities that did not have current market quotations:

> The Board has delegated day-to-day valuation matters to a Valuation Committee that is comprised of the Trust's President, Treasurer and Assistant Treasurer and is overseen by the Trustees. The function of the Valuation Committee is to review each Adviser's valuation of securities held by any series of the Trust for which current and reliable market quotations are not readily available. Such securities are valued at their respective fair values as determined in good faith by each Adviser, and the Valuation Committee gathers and reviews Fair Valuation Forms that are completed by an Adviser to support its determinations, and which are subsequently reviewed and ratified by the Board. The Valuation Committee meets as needed. The Valuation Committee met twelve times during the fiscal year ended August 31, 2019, with respect to the Fund.

21. The 2019 Prospectus explained that the Fund implemented its strategy by investing in swaps:

> The Fund implements these strategies by investing globally (including in emerging markets) either directly in, or through total return swaps on a broad range of instruments, including, but not limited to, equities, bonds (including but not limited to high-yield or "junk" bonds), currencies, commodities, MLPs, credit derivatives, convertible securities, futures, forwards, options, including complex options such as barrier options. The Fund may also invest up to 25% of its assets in a subsidiary that is invested in these types of derivative instruments (the "Subsidiary") as described further below. The Fund has no limits with respect to the credit rating, maturity or duration of the debt securities in which it may invest.

22. The 2019 Prospectus stated the following concerning valuation risk:

> Valuation Risk. The sales price the Fund could receive for any particular portfolio investment may differ from the Fund's valuation of the investment, particularly for securities or other investments that trade in thin or volatile markets or that are valued using a fair value methodology. Investors who purchase or redeem Fund shares on days when t3he Fund is holding fair-valued securities may receive fewer or more shares or lower or higher redemption proceeds than they would have received if the Fund had not fair-valued securities or had used a different valuation methodology. Valuation may be more difficult in times of market turmoil since many investors and market makers may be reluctant to purchase complex instruments or quote prices for them. The Fund's ability to value its investments may be impacted by technological issues and/or errors by pricing services or other third party service providers.

23. The 2019 Prospectus reported that the Fund's net asset value was $10.37 per investor class share as of August 31, 2018, with a total return of 11.28% for the previous year ended August 31, 2018, and $10.42 per institutional class share as of August 31, 2018, with a total return of 11.52% for the previous year ended August 31, 2018.

24. On December 20, 2019, the Trust filed a post-effective amendment pursuant to Rule 485B to its Registration Statement on Form N-1A, to become effective December 31, 2019 (the "2020 Prospectus"). The 2020 Prospectus was signed by the Individual Defendants.

25. The 2020 Prospectus echoed the 2019 Prospectus concerning NAV calculation, valuation of securities, and swaps, as described in ¶¶19-22.

26. The 2020 Prospectus reported that the Fund's net asset value was $11.54 per investor class share as of August 31, 2019, with a total return of 3.48% for the previous year ended August 31, 2019, and $11.62 per institutional class share as of August 31, 2019, with a total return of 3.81% for the previous year ended August 31, 2019.

27. The statements referenced in ¶¶18-26 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Fund's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Infinity Q's Chief Investment Officer made adjustments to certain parameters within the third-party pricing model that affected the valuation of the swaps held by the Fund; (2) consequently, Infinity Q would not be able to calculate NAV correctly; (3) as a result, the previously reported NAVs were unreliable; (4) because of the foregoing, the Fund would halt redemptions and liquidate its assets; and (5) as a result, the Prospectuses were materially false and/or misleading and failed to state information required to be stated therein.

7

**The Truth Emerges**

28.     On February 22, 2021, Infinity Q filed a request with the SEC for an order pursuant to Section 22(e)(3) of the Investment Company Act of 1940 suspending the right of redemption with respect to shares of the Fund, effective February 19, 2021, because of Infinity Q's inability to determine NAV. The request also stated that the Fund was liquidating its portfolio and distributing its assets to shareholders. The request stated, in pertinent part:

> H.  Relief Requested
> Applicants hereby request an order pursuant to Section 22(e) of the 1940 Act to suspend the right of redemption with respect to shares of the Fund effective February 19, 2021 and postpone the date of payment of redemption proceeds with respect to redemption orders received but not yet paid as of February 22, 2021 for more than seven days after the tender of securities to the Fund, until the Fund completes the liquidation of its portfolio and distributes all its assets to current and former shareholders, as described in the conditions, or, if earlier, the Commission rescinds the order granted pursuant hereto. Applicants believe that the relief requested is appropriate for the protection of shareholders of the Fund. Section 22(e)(1) of the 1940 Act provides that a registered investment company may not suspend the right of redemption or postpone the date of payment or satisfaction upon redemption of any redeemable securities in accordance with its terms for more than seven days except for any period during which the New York Stock Exchange ("NYSE") is closed other than customary week-end and holiday closing, or during trading on which the NYSE is restricted.
>
> Section 22(e)(3) of the 1940 Act provides that redemptions may also be suspended by a registered investment company for such other periods as the Commission may by order permit for the protection of security holders of the registered investment company. As such, only the Commission has the authority to suspend redemptions.
>
> III. Justification for the Relief Requested
> The circumstances leading to the request for relief arise from Infinity Q's inability, as required under the Fund's valuation procedures, to value certain Fund holdings and the Fund's resulting inability to calculate net asset value ("NAV"). As disclosed in the Fund's statement of additional information, in calculating the Fund's NAV, any Fund holdings for which current and reliable market quotations are not readily available "are valued at their respective fair values as determined in good faith by [the] Adviser" under procedures approved and overseen by the

Board of Trustees of the Trust (the "Board"). The Fund's current portfolio includes swap instruments (the "Swaps") for which Infinity Q calculates fair value using models provided by a third-party pricing vendor. As of February 18, 2021, the Fund's reported NAV was derived using a valuation for these Swaps that resulted in the value of the Swaps constituting approximately 18% of the Fund's reported NAV.

On February 18, 2021, based on information learned by the Commission staff and shared with Infinity Q, Infinity Q informed the Fund that Infinity Q's Chief Investment Officer had been adjusting certain parameters within the third-party pricing model that affected the valuation of the Swaps. On February 19, 2021, Infinity Q informed the Fund that at such time it was unable to conclude that these adjustments were reasonable, and, further, that it was unable to verify that the values it had previously determined for the Swaps were reflective of fair value. Infinity Q also informed the Fund that it would not be able to calculate a fair value for any of the Swaps in sufficient time to calculate an accurate NAV for at least several days. Infinity Q and the Fund immediately began the effort to value these Swap positions accurately to enable the Fund to calculate an NAV, which effort includes the retention of an independent valuation expert. However, Infinity Q and the Fund currently believe that establishing and verifying those alternative methods may take several days or weeks. Infinity Q and the Fund are also determining whether the fair values calculated for positions other than the Swaps are reliable, and the extent of the impact on historical valuations. As a result, the Fund was unable to calculate an NAV on February 19, 2021, and it is uncertain when the Fund will be able to calculate an NAV that would enable it to satisfy requests for redemptions of Fund shares.

The Fund and Infinity Q believe that the best course of action for current and former shareholders of the Fund is to liquidate the Fund in a reasonable period of time, determine the extent and impact of the historical valuation errors, and return the maximum amount of proceeds to such shareholders. Relief permitting the Fund to suspend redemptions and postpone the date of payment of redemption proceeds with respect to redemption orders received but not yet paid will permit the Fund to arrive at a valuation for the Swaps and any other portfolio holdings for which current and reliable market quotations are not available, and to liquidate its holdings in an orderly manner.

Applicants submit that granting the requested relief would be for the protection of the shareholders of the Fund, as provided in Section 22(e)(3) of the 1940 Act. Applicants assert that in requesting an order by the Commission, the goal of the Board and Infinity Q is to ensure that the Fund's current and former shareholders will be treated appropriately in view of the otherwise detrimental effect on the Fund of Infinity Q's inability to calculate a fair value for any of the Swaps and an accurate NAV for the Fund. The requested relief is intended to permit an orderly liquidation of the Fund's portfolio and ensure that all of the shareholders are protected in the process.

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Fund's shares, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the publicly traded securities of the Fund during the Class Period or who held shares of the Fund as of February 22, 2021 (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure and Defendants' price manipulation. Excluded from the Class are Defendants herein, the officers and directors of the Trust and Infinity Q, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Fund's shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Fund;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Trust to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Fund's shares during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Fund's shares are traded in efficient markets;

(d) the Fund's shares were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Fund traded on the NASDAQ, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Fund's shares; Plaintiff and members of the Class purchased and/or sold the Fund's shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Fund was rapidly reflected in and incorporated into the Fund's share price during the Class Period.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against the Trust, Infinity Q and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, the Trust, Infinity Q, and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. In addition, the Trust, Infinity Q, and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Fund's shares during the Class Period.

44. The Trust, Infinity Q, and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Trust were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Fund, their control over, and/or receipt and/or modification of the Trust's allegedly materially misleading statements, and/or their associations with the Fund which made them privy to confidential proprietary information concerning the Fund, participated in the fraudulent scheme alleged herein.

45. Individual Defendants, who are the senior officers and/or directors, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and

intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel to members of the investing public, including Plaintiff and the Class.

46. As a result of the foregoing, the market price of the Fund's shares was artificially inflated during the Class Period. In ignorance of the falsity of the Trust's, Infinity Q's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Fund's shares during the Class Period in purchasing the Fund's shares at prices that were artificially inflated as a result of the Trust, Infinity Q, and the Individual Defendants' false and misleading statements.

47. Had Plaintiff and the other members of the Class been aware that the market price of the Fund's shares had been artificially and falsely inflated by the Defendants' misleading statements and by the material adverse information which the Defendants did not disclose, they would not have purchased the Fund's shares at the artificially inflated prices that they did, or at all.

48. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

49. By reason of the foregoing, the Trust, Infinity Q, and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Fund's shares during the Class Period.

## COUNT II

### Violation of Section 9 of The Exchange Act
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. This Count is asserted against the Trust, Infinity Q and the Individual Defendants and is based upon Section 9(f) of the Exchange Act, 15 U.S.C. § 78i.

52. Defendants violated §9 of the Exchange Act in that they engaged in a scheme to inflate the NAV of the Fund. Further, through their dissemination of the false statements set forth herein, Defendants misled investors concerning the nature of their actions and its effect on the Fund's NAV.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their holdings of the Fund.

## COUNT III

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of the Trust and Infinity Q, and conducted and participated, directly and indirectly, in the conduct of the Trust and Infinity Q's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Trust and Infinity Q's business practices.

56. As officers and/or directors, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Fund's financial condition and results of operations, and to correct promptly any public statements issued by the Trust or Infinity Q which had become materially false or misleading.

57. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and

public filings which the Trust and Infinity Q disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Trust and Infinity Q to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Trust and Infinity Q within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Fund's shares.

58. Each of the Individual Defendants, therefore, acted as a controlling person of the Trust and Infinity Q.  By reason of their senior management positions and/or being directors of the Trust and Infinity Q, each of the Individual Defendants had the power to direct the actions of, and exercised the same, to cause the Trust and Infinity Q to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Trust and Infinity Q and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Trust and Infinity Q.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

  C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

  D. Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: April 27, 2021      Respectfully submitted,

           **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

           */s/ Thomas L. Laughlin, IV*
           Thomas L. Laughlin, IV
           Rhiana L. Swartz
           The Helmsley Building
           230 Park Avenue, 17th Floor
           New York, NY 10169
           Telephone: (212) 223-6444
           Facsimile: (212) 223-6334
           tlaughlin@scott-scott.com
           rswartz@scott-scott.com

           *Counsel for Plaintiff*

           **CRIDEN & LOVE, P.A.**
           Michael E. Criden
           Lindsey Grossman
           7301 SW 57th Court, Suite 515
           South Miami, FL 33143
           Telephone: (305) 357-9000
           Facsimile: (305) 357-9050
           mcriden@cridenlove.com
           lgrossman@cridenlove.com

           *Additional Counsel for Plaintiff*